UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANA DEVONNE WILLIS,

      Plaintiff,

v.

ANDREW SAUL, COMMISSIONER
OF SOCIAL SECURITY,

      Defendant.

Case No. 2:20-cv-10304
District Judge Laurie J. Michelson
Magistrate Judge Kimberly G. Altman

_____/

## REPORT AND RECOMMENDTION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

I.      Introduction

This is a social security case.  Plaintiff Dana Devonne Willis brings this action under 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 13, 15), which have been referred to the undersigned for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, it is RECOMMENDED that the Commissioner's Motion for Summary Judgment (ECF No. 15) be DENIED,

1

Willis's Motion for Summary Judgment (ECF No. 13) be GRANTED IN PART, and the matter be remanded for further proceedings under sentence four of 42 U.S.C. § 405(g).  As will be explained, there is an ambiguity in the residual functional capacity as articulated by the administrative law judge that requires clarification and further analysis on remand.

## II.    Background

### A.    Procedural History

Willis was 44 years old at the time of her SSI application date of September 19, 2016.  (ECF No. 11, PageID.189).  She earned her GED in 1989 and had prior work experience as a payroll specialist and administrative assistant.  (*Id*., PageID.73, 208).  She alleged disability due to severe anxiety, PTSD, and major depression.  (*Id*., PageID.207).  According to her counsel, Willis has a history of mental illness but her condition "deteriorated when her daughter died from drowning in August 2012."  (ECF No. 13, PageID.315).

After Willis's SSI application was denied at the initial level on February 28, 2017 (*Id*., PageID.117-123), she timely requested an administrative hearing, which was held on July 29, 2018, before the ALJ.  (*Id*., PageID.78-103).  Willis testified at the hearing, as did a vocational expert ("VE").  (*Id*.).  On September 19, 2018, the ALJ issued a written decision finding that Willis was not disabled during the relevant time period.  (*Id*., PageID.61-77).  On October 17, 2019, the Appeals

Council denied review, making the ALJ's decision the final decision of the

Commissioner.  (*Id.*, PageID.49-53).  Willis timely filed for judicial review of the

final decision.  (ECF No. 1).

## B.    Medical Evidence

The medical record reflects that Willis had an intake assessment at KaraLee

and Associates on March 1, 2016, where she presented with anger, anhedonia,[1]

crying spells, decreased concentration, feelings of hopelessness, irritability, mood

swings, and sleep dysfunction.  (ECF No. 11, PageID.270).  Her intake notes

reflect Willis's continued difficulty with her daughter's death in August 2012.  (*Id.*,

PageID.274).  She reported having "anxiety all the time," and upon examination

exhibited a cooperative attitude and behavior; appropriate grooming and attire;

spontaneous stream of consciousness; normal progression of thought; a guilty

content of thought explained by grief; an irritable, sad, and depressed mood;

"restricted (constricted)" affect; and normal orientation and memory.  (*Id.*,

PageID.270, 273).  She had no suicidal or homicidal tendencies, but only a fair

rating for common sense judgment, insight, and abstract reasoning.  (*Id.*,

PageID.273).  Her prognosis was also rated as fair, and she was diagnosed with

major depressive disorder, recurrent and moderate.  (*Id.*, PageID.274).  Of note, a

---

[1] "Anhedonia is the inability to feel pleasure."
https://www.webmd.com/depression/what-is-anhedonia#1 (last accessed February 17, 2021).

box was checked on the initial intake form stating that psychiatric referral was warranted but not urgent, because her signs and symptoms were "not so severe that they cannot function at home and/or work."  (*Id.*, PageID.276).

At a psychiatric evaluation later that month, Willis was found to appear agitated and disheveled upon examination, avoidant of eye contact, with no cognitive impairment, normal thought content, and a depressed mood.  (*Id.*, PageID.281).  She was also found to have fair insight and judgment, and a diagnosis of PTSD was added to her diagnostic impressions along with the previously diagnosed major depressive disorder.  (*Id.*).  She was prescribed Zoloft and did not want to increase her 100mg dosage at that time.  (*Id.*, PageID.282).

Willis had a quarterly status review on June 1, 2016, where it was noted that there were many triggers to her depression, family stress, and being reminded of her daughter's death.  (*Id.*, PageID.269).  She was next seen on July 20, 2016, reporting that she "[thought] about the death of her daughter all the time."  (*Id.*, PageID.278).  She felt irritable and hopeless, but had a healthy/nourished appearance, fully communicative interactions, organized and appropriate thought form and content, fully intact orientation, and was alert.  (*Id.*).  However, she did exhibit loud speech and an anxious mood/affect, and had made little progress toward her goals.  (*Id.*).   Her medications at that time were Zoloft, Seroquel, and Klonopin.  (*Id.*).  On December 9, 2016, Willis remained anxious and depressed,

4

dwelling on her daughter's death but exhibiting no additional symptoms.  (*Id*.,
PageID.306).

On February 8, 2017, Willis underwent a mental status evaluation with Hugh
D. Bray, Phd.  (*Id*., PageID.284-288).  Dr. Bray found that Willis had an adequate
contact with reality, but diminished self-esteem.  Her insight and judgment were
adequate, and she was cooperative, verbally responsive, talkative, and not
embellishing or minimizing her symptomology.  (*Id*.).  Willis was tearing up and
crying during the evaluation, exhibiting anxiety and a depressed mood.  (*Id*.).  Dr.
Bray noted that her "concentration, attention, persistence and effort" that day were
"struggled."  (*Id*., PageID.287).  He diagnosed her with major depressive disorder,
bereavement, generalized anxiety disorder, and panic disorder, finding her
prognosis to be "fair to guarded."  (*Id*., PageID.288).  He found her mental ability
to relate to others, including fellow workers and supervisors to be moderately
impaired, though she was able to establish a rapport with him.  He found her ability
to understand, remember, and carry out tasks only mildly impaired; she was able to
perform simple repetitive tasks during the evaluation and could likely handle more
complex tasks, but would likely have moderate difficulty in performing multiple
step tasks.  Her ability to maintain attention, concentration, pace, and effort was
found moderately impaired, and her mental ability to withstand the stress and

pressure of day to day work activities was moderately to significantly impaired. (*Id*.).

Later that month on February 28, 2017, Willis's medical records were reviewed by state agency consultant Rom Kriauciunas, Ph.D. (*Id*., PageID.104-115). Based on the medical evidence available at that time, Dr. Kriauciunas found that Willis was not significantly limited in many areas, and was moderately limited in the ability to understand, remember, and carry out detailed instructions; maintaining attention and concentration for extended periods; completing complex assignments; responding appropriately to supervisors; getting along with coworkers or peers; responding appropriately to changes in the work setting; and adapting to changes on the job. (*Id*., PageID.111-112). Based on this, Dr. Kriauciunas found that Willis could perform simple, low-stress, unskilled work on a sustained basis. (*Id*., PageID.108).

A progress note from July 7, 2017 showed that Wellbutrin was added to Willis's medications and was helping. (*Id*., PageID.301). She had made mild improvement toward her goals at that time, but had the same anxious mood/affect and loud speech as before; her other, normal results were also consistent. (*Id*.). Willis had another quarterly status review on September 1, 2017, which noted that her triggers had been internal, automatic thoughts, frustration with her husband,

and exposure to any "drowning" related conduct, which triggered grief over her daughter's death.  (*Id*., PageID.300).

Willis had another appointment on September 29, 2017, noting that her uncle had died four days prior.  (*Id*., PageID.299).  At that visit she exhibited much worse symptoms, including a disheveled appearance, disruptive interactions, distracted and paranoid thought, distractibility, and reported insomnia.  (*Id*.). Willis also underwent a mental residual functional capacity assessment that day with psychiatrist Andrea Nowak, M.D.  (*Id*., PageID.290-294).  Dr. Nowak did not believe that Willis was a malingerer, and found that she had extreme limitations in her abilities to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; make simple work-related decisions; complete a normal workday and workweek without interruptions from her symptoms; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers; respond appropriately to changes in the work setting; travel in unfamiliar places; set realistic goals; and tolerate normal levels of stress.  (*Id*., PageID.290-293).  She found many marked and moderate limitations in other areas as well.  (*Id*.).  Dr. Nowak opined that Willis struggled to maintain activities of daily living, only left the home twice per month, and had no ability to manage stress.  (*Id*., PageID.293).

7

At the hearing, Willis testified that she usually does not leave her house or her room due to PTSD, anxiety, and depression.  (*Id*., PageID.83).  She stated that she stays in her pajamas every day, though she does not wear them to doctor's appointments or weekly therapy sessions.  (*Id*., PageID.87).  She is able to dress herself, do laundry, and vacuum the house, but cannot cook, has difficulty with concentration and memory, and difficulty being around others.  (*Id*., PageID.88-90).  In addition, she testified to having crying spells at least once per day regarding the loss of her daughter, as well as panic attacks a few times per month, more often in the summer months, due to stress.  (*Id*., PageID.92-93).

III.    Framework for Disability Determinations (the Five Steps)

Under the Act, DIB and SSI are available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

8

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, No. 08-10279, 2008 WL 4793424, at *4 (E.D.

Mich. Oct. 31, 2008), citing 20 C.F.R. § 416.920; *see also Heston v. Comm'r of*

*Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the

claimant throughout the first four steps.... If the analysis reaches the fifth step

without a finding that claimant is not disabled, the burden transfers to the

[Commissioner]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110

(6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Willis was

not disabled under the Act. At Step One, the ALJ found that Willis had not

engaged in substantial gainful activity since her application date of September 19, 2016.  (ECF No. 11, PageID.66).  At Step Two, the ALJ found that she had the severe impairments of major depressive disorder; post-traumatic stress disorder ("PTSD"); bereavement; generalized anxiety disorder; and panic disorder.  (*Id.*).  At Step Three, the ALJ found that Willis's impairments, whether considered alone or in combination, did not meet or medically equal a listed impairment.  (*Id.*, PageID.67-68).

The ALJ then assessed Willis's residual functional capacity ("RFC"), concluding that she was capable of performing a full range of work at all exertional levels, but with the following non-exertional additional limitations:

> [S]imple, routine, repetitive tasks (less than constant) in a work environment free of fast pace production requirements, involving only simple work related decisions with few, if any, work place changes; brief and superficial contact [with] co-workers, supervisors, and the general public; no team or tandem tasks; no exposure to open bodies of water; and [she] will [be] off task for eight percent of the workday.

(*Id.*, PageID.68-69).

At Step Four, the ALJ found that Willis was unable to perform any past relevant work.  (*Id.*, PageID.73).  At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Willis was capable of performing the jobs of housekeeping (600,000 jobs nationally), janitor (800,000 jobs nationally), and mail sorter (60,000 jobs nationally).  (*Id.*,

10

PageID.74).  As a result, the ALJ concluded that Willis was not disabled under the Act.  (*Id.*).

## IV.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.' "  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....").  Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must " 'take into account whatever in the record fairly detracts from [the] weight' " of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (internal quotations omitted).  Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (internal quotations omitted).

V.    Analysis

A.

The first issue before the Court is one of interpretation.  The RFC states in part that Willis is limited to "simple, routine, repetitive tasks (less than constant)." (ECF No. 11, PageID.68).  Likewise, the hypothetical question the ALJ posed to the VE also limited Willis to "simple, routine, repetitive tasks less than constant." (*Id.*, PageID.96).  Assuming that the modifier "less than constant" applies to "simple, routine, [and] repetitive tasks," which is all that the RFC allows (with

12

additional restrictions), Willis argues that this is clearly work-preclusive.  As Willis notes, "an activity performed 'constantly' exists 2/3 of the workday or more."  *See, e.g., Woodall v. Berryhill*, No. 1:17-CV-01289, 2018 WL 3133442, at *8 (N.D. Ohio June 11, 2018), *report and recommendation adopted sub nom. Woodall v. Comm'r of Soc. Sec.*, No. 1:17-CV-1289, 2018 WL 3126552 (N.D. Ohio June 26, 2018) and *Wilson v. Berryhill*, No. 3:16CV1771, 2017 WL 2720344, at *15 (N.D. Ohio June 23, 2017) (both citing *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Appendix C*).  Willis argues that this precludes her from working on a "regular and continuing basis; i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule."  *See* S.S.R. 96–9p, 1996 WL 374185, at *2.  If Willis cannot do even simple, routine, repetitive tasks on a constant basis, she will by definition be off task for at least a third of the day, in combination with the RFC's additional restriction that Willis will be off task for 8% of the day.  The VE found that being off task for over 10% of the day is work preclusive.  (ECF No. 11, PageID.97). Thus, the argument goes, the RFC does not allow for Willis to sustain competitive employment by the VE's own testimony.

The Commissioner responds that Willis's reading of "simple, routine, repetitive tasks (less than constant)" is flawed.  (ECF No. 15, PageID.341). Instead, the Commissioner contends that " 'less than constant' appears to qualify

'repetitive,' such that the ALJ found that Plaintiff could perform tasks that are simple, routine, and (for up to two-thirds of the workday) repetitive." (*Id*.). This, then, would be consistent with the VE's testimony that someone with the RFC's limitations could work as a housekeeper, janitor, and mail sorter. (*Id*.). But the Commissioner's argument fails to clarify the intended meaning of the ALJ; the Court can only infer that the VE interpreted "less than constant" to apply only to "repetitive" (suggesting that the Commissioner agrees that a "less than constant" restriction on "simple, routine, [and] repetitive tasks" would be work-preclusive). Neither party offers much to convince the Court that their interpretation of the RFC is the correct one. In her reply, Willis suggests that this lack of clarity alone is reason for remand. The Court agrees.

The unclear language at issue in this matter infects both the RFC and the hypothetical question posed by the ALJ to the VE. "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform [the specified] work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). The ALJ's hypothetical question should present the vocational expert with the ALJ's assessment of what the claimant "can and cannot do." *Webb v. Comm'r of*

*Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004).  The ALJ's hypothetical question

should include "all of a claimant's limitations."  *Id*.

In *Russell v. Comm'r of Soc. Sec.*, No. 2:15-CV-88, 2016 WL 286431 (S.D.

Ohio Jan. 25, 2016) the RFC and hypothetical question to the VE stated that

claimant was "hesitant to ask questions or ask for help."  The VE clarified that if

the claimant was not refusing to ask questions and proceeding correctly "all the

time" that she would still be employable.  *Id*. at *1.  But the district court found

that both "hesitant" and "all the time" were unquantifiable and thus inaccurate

ways to portray the claimant's limitations.  *Id*. at *4.  Similarly, the Court here

does not know whether Willis's "less than constant" limitation means she can do

the applicable task(s) almost two-thirds of the day, or around one-third of the day,

or less.  More importantly, the Court is left to guess whether said limitation applies

only to repetitive tasks, or to simple and routine tasks as well, which would

encompass all that Willis is able to do.

The Commissioner argued in *Russell* that the ALJ's lack of clarity on that

point was harmless error, but the district court disagreed:

> In the instant case, however, the limitation corresponding to Plaintiff's
> hesitancy to ask questions or ask for help is not obvious.  Furthermore, the
> ALJ did not provide additional information that would have clarified
> Plaintiff's limitation with respect to her hesitancy to ask questions. . . . The
> purpose of the hypothetical question, and the related RFC determination, is to
> quantify that kind of variable in order to reach a disability finding supported
> by substantial evidence.  The record of substantial evidence, in turn, provides

a basis for meaningful review when necessary.  Here, the ALJ's ambiguous hypothetical question prevents that meaningful review.

*Id*. at \*5.[2]

Similarly, the unclear RFC restriction is not harmless here.  Due to the ambiguity in the hypothetical question, the VE may have answered the question based on someone with a less than constant limitation on only repetitive tasks.  But if that limitation extends to Willis's simple and routine tasks as well, the Court cannot say "there is [no] reason to believe that [it] might lead to a different result."  *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 520 (6th Cir. 2011) (citing *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x. 171, 173 (6th Cir. 2004)).

Other courts have remanded in situations involving an ambiguous RFC.  In *Carrion v. Comm'r of Soc. Sec.*, No. 1:17 CV 1992, 2018 WL 4206945 (N.D. Ohio Aug. 31, 2018), the district court relied on *Russell* in finding that the RFC limitation that claimant "may need extra time and repetition for new learning" was unclear: the amount of repetition and time that the claimant would require was

---

[2] On appeal, the Sixth Circuit upheld the ALJ's decision in this matter, finding that "even if the VE's testimony was ambiguous, there was substantial other evidence that she could perform her past relevant work as a medical cleaner."  *Russell v. Comm'r of Soc. Sec.*, 670 F. App'x 388, 389 (6th Cir. 2016).  Here, because the Commissioner has not proffered this argument, and as there is substantial doubt whether Willis could perform the positions listed by the ALJ if she were only able to do simple, routine, repetitive tasks on a less than constant basis, remand is proper.

16

unquantified.[3]  Additionally, the VE in that matter had testified that an individual

who is off task more than 20% of the time was unemployable, and the vagueness

of the RFC rendered it possible that the "extra time and repetition" needed would

ultimately render the claimant "off task" for more than 20% of the time.  *Id.* at *2.

This scenario is quite similar to the current matter, in which Willis was found to

have a limitation of being off task 8% of the time, the VE testified that being off

task more than 10% of the time is work-preclusive, and the unclear aspect of the

RFC may contribute to additional off task time for Willis, which would quite

possibly render her off task more than 10% of the time.

    Further, in *Vonlinger v. Berryhill*, No. CV 16-319-DLB, 2017 WL 2568931,

at *6 (E.D. Ky. June 13, 2017), the ALJ's hypothetical question to the VE included

the "*ability to sustain— (Pause.) —for extended periods* but should be able to

complete simple tasks for six to eight hours in a [*sic*] eight-hour period at

appropriate pace and sustain this limit across days and weeks."  [emphasis added].

Likewise, the RFC in that matter stated that the claimant "has the ability to sustain

for extended periods, but should be able to complete simple tasks for six to eight

hours in an eight hour period at an appropriate pace and sustain this limit across

days and weeks."  *Id*.  The claimant argued that the RFC and hypothetical question

---

[3] In *Carrion*, the district court rejected a report and recommendation that the ALJ's decision be affirmed.

were confusing, as the ALJ never explained *what* the claimant was capable of

sustaining for extended periods.  The district court in *Vonlinger* agreed, stating:

> This ambiguity obscures the ALJ's meaning because the Court cannot
> ascertain whether appropriate limitations were included in either the
> RFC or the hypothetical posed to the VE.  The ALJ relied on the VE's
> answer to that hypothetical in determining that Plaintiff is not disabled
> because a significant number of jobs exist in the national economy that
> she can perform.  The ambiguities in the RFC and hypothetical are
> therefore a problem for two reasons—first, because the ALJ bears the
> burden at Step Five of identifying "jobs in the economy that
> accommodate [Plaintiff's] residual functional capacity," and second,
> because the ALJ's determination of no disability must be supported by
> substantial evidence.

*Id*. (internal citations omitted).  The district court noted that while typographical

errors in the RFC are generally harmless, an inaccurate or incomplete analysis due

to ambiguity can serve as a basis for remand.  *Id*. at *6-7 (citing *Karger v. Comm'r

of Soc. Sec.*, 414 F. App'x 739, 749 (6th Cir. 2011)).  It found that "[w]ithout

knowing whether the ALJ found that Plaintiff had non-exertional limitations and

what those specific limitations are, the Court cannot determine whether the

hypothetical question posed to the VE was necessary, accurate, and/or constituted

substantial evidence to support the ALJ's findings" at Step Five.  *Id*. (quoting

*Johnson v. Comm'r of Soc. Sec.*, No. 08-13551, 2009 WL 3126319, at *7 (E.D.

Mich. Sept. 25, 2009)).  The same is true here, and thus remand is appropriate in

this matter due to the unresolved ambiguity of the RFC.

The Commissioner appears to argue that Willis has waived this argument by not raising it at the hearing, citing *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168–69 (6th Cir. 2009).  But *Beinlich* is inapposite, as it applies to plaintiff's counsel's obligation to cross-examine the VE as to the accuracy of their testimony. That is not the issue here.  Rather, the ALJ's hypothetical question to the VE and the corresponding parts of the RFC were ambiguous, and it is unclear whether the ALJ and the VE – upon whom the ALJ relied in making his findings – were on the same page.  While ideally the ambiguity could have been resolved at the hearing, it was not, and this now requires remand for the reasons stated above.  The Commissioner has not shown that an issue of this type must be raised at hearing or is otherwise waived.

### B.

Willis also argues that the ALJ neglected to consider her inability to tolerate stress as a functional limitation in the RFC.  The Court will examine this issue below, but finds no independent cause for remand on this basis.

Willis notes that all of the opinion evidence of record supports a limitation on work-related stress.  Examining psychologist Dr. Bray noted in February 2017 that Willis's ability to "withstand stress and pressure associated with day to day work activities is moderately to significantly impaired." (ECF No. 11, PageID.288).  Later, in September 2017, treating psychiatrist Dr. Nowak rated

19

Willis's limitation on tolerating normal levels of stress as "extreme," and wrote that Willis had "no ability to manage stress." (*Id.*, PageID.293). Even state agency consultant Dr. Kriauciunas, whose opinion the ALJ gave great weight, found that Willis could only perform "simple, *low-stress*, unskilled work on a sustained basis." (*Id.*, PageID.108) (emphasis added). Willis notes that this is supported by her testimony at the hearing and other subjective evidence, stating that she did not bathe regularly (as the water reminded her of her daughter's drowning), had to be reminded to brush her teeth and wash her hair, and had a "disheveled" appearance on at least two occasions while in therapy. (ECF No. 13, PageID.325, citing ECF No. 11, PageID.87, 227-228, 281, 299). She contends that given the evidence, the RFC's lack of a low stress limitation is cause for remand, citing SSR 85-15, 1985 WL 56857 ("Any impairment-related limitations created by an individual's response to demands of work, however, must be reflected in the RFC assessment.").

Willis characterizes the ALJ's opinion as one in which it is "beyond dispute that the ALJ in this case refused to acknowledge Ms. Willis' inability to tolerate stress, despite the fact that all three medical sources of record agreed as to this limitation." (ECF No. 13, PageID.322). This is not the case. For one, the ALJ noted that "[a]ll of [the RFC's] restrictions also limit stress that the claimant may encounter on the job so as to minimize the potential for symptom exacerbation or

triggers." (ECF No. 11, PageID.71). Further, the ALJ noted that "any difficulties that the claimant may have in withstanding stress and pressure associated with day to day work activities has been sufficiently accounted for in the residual functional capacity by limiting her to simple, routine, repetitive tasks, no fast pace production work, simple work related decisions, few work place changes, limited social interaction, and time off task." (*Id.*, PageID.72). The authorities cited by Willis do not, as she contends, require the RFC to contain an explicit "low-stress" restriction in order to accommodate that limitation. *See* SSR 85-15, 1985 WL 56857; SSR 85-16, 1985 WL 56855; *Young v. Sec'y of HHS*, 925 F.2d 146, 148 (6th Cir. 1990). The ALJ's opinion details how the RFC accommodates Willis's difficulties in withstanding work-related stress; therefore, at this stage, the burden is on Willis to provide evidence that the given limitations inadequately accommodate her stress-related needs. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d at 1110.

Willis also takes issue with the ALJ's treatment of the three medical opinions of record and their incorporation into the RFC, which the Court shall address in turn. First, Willis takes issue with the ALJ's treatment of state agency consultant Dr. Kriauciunas's opinion. Federal or state agency medical consultants are considered to be qualified experts in Social Security disability evaluation. 20 C.F.R. § 404.1513a(b)(1). However, although ALJ's must consider medical evidence from federal or state agency medical consultants, they are not required to

21

adopt their findings.  *Id.*  The most important factors in determining the weight to give federal or state agency consultant opinions are supportability and consistency.  20 C.F.R. § 404.1520c.

Willis argues that while the ALJ gave Dr. Kriauciunas's opinion great weight, that opinion was not fully incorporated into the RFC.  But the Commissioner correctly responds that a medical opinion need not align directly with the RFC in order for the RFC to be valid.  *See Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x. 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ.") (internal citations omitted); *Davis v. Comm'r of Soc. Sec. Admin.*, No. 2:18-CV-10228, 2019 WL 2051899, at *6 (E.D. Mich. Feb. 19, 2019) *report and recommendation adopted sub nom. Davis v. Comm'r of Soc. Sec.*, No. 18-10228, 2019 WL 1324239 (E.D. Mich. Mar. 25, 2019) ("Plaintiff's argument that the ALJ erred because he 'did not rely on any physician's opinion in formulating his RFC' has been squarely rejected by the Sixth Circuit.") (internal citations omitted).  An ALJ is "entitled to create an RFC based on his evaluation of the available medical evidence."  *Sparrow v. Comm'r of Soc. Sec.*, No. 15-CV-11397, 2016 WL 1658305, at *7 (E.D. Mich. Mar. 30, 2016), *report and recommendation adopted*, No. 15-11397, 2016 WL 1640416 (E.D. Mich. Apr. 26, 2016).  And even an

opinion given "great weight" need not be incorporated in its entirety.  *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015).

Additionally, the RFC is more limiting than Dr. Kriauciunas's opinion, which restricts Willis to simple, low-stress, unskilled work.  (ECF No. 11, PageID.108).  The RFC also requires simple work, as well as routine and repetitive tasks, and no fast pace production requirements, only simple work related decisions, few work place changes, and limits on contact with co-workers, supervisors, and the general public, as well as Willis being off task for 8% of the day.  (*Id.*, PageID.69).  Arguing that the RFC is too restrictive to be in line with a state agency consultant's opinion is "curious and unavailing."  *Mosed v. Comm'r of Soc. Sec.*, No. 2:14-CV-14357, 2016 WL 6211288, at *7 (E.D. Mich. Jan. 22, 2016), *report and recommendation adopted,* No. 14-CV-14357, 2016 WL 1084679 (E.D. Mich. Mar. 21, 2016).  *See also Warren v. Comm'r of Soc. Sec.*, No. 13-cv-13523, 2014 WL 3708565, at *4 (E.D. Mich. July 28, 2014) (affirming the ALJ's RFC as supported by substantial evidence, in part because the ALJ assessed a more restrictive RFC than that opined by the claimant's physicians).  For these reasons, the Court finds no error in the ALJ's incorporation of the state agency consultant's opinion evidence into the RFC.

As to examining psychologist Dr. Bray's opinion, the ALJ afforded most of Dr. Bray's findings great weight, but only some weight to the limitation that

23

Willis's "ability to withstand stress and pressure associated with day to day work activities is moderately to significantly impaired," instead finding only moderate limitation in this area.  (ECF No. 11, PageID.72).  Generally, an examining source is to be given more weight than a non-examining source, but less than a treating source.  20 C.F.R. § 416.927(c)(1)–(2).  But this is not a bright-line rule.  *See Lyons v. Soc. Sec. Admin.,* 19 F. App'x 294, 302 (6th Cir. 2001).  The supportability and consistency of the opinion and the specialization of the opinion's author are also key factors.  20 C.F.R. § 416.927(c)(3)–(5).

In giving some weight to this part of Dr. Bray's opinion, the ALJ noted Willis's anxiety, panic attacks, and grief, as well as "a couple of occasions of disheveled appearance," which Willis also cites now.  (*Id.*, PageID.69).  But the ALJ also cited numerous occasions where Willis had appropriate attire and grooming or a "healthy/nourished appearance" during mental status exams, as well as fair, intact, and adequate judgment in her examinations at KaraLee and with Dr. Bray.  (*Id.*).  Willis pushes back that adequate judgment and grooming do not translate to the ability to handle work-related stress, but again, the burden is on Willis to provide evidence of her inability to do so.  Willis cites her hearing testimony regarding her hygiene-related habits and the records regarding her disheveled appearance.  (ECF No. 13, PageID.325).  However, the records that note a disheveled appearance are in the minority, and Willis's subjective

24

statements were found "not entirely consistent with the medical evidence," (ECF No. 11, PageID.70), which she does not challenge. Willis contends that "it is difficult to understand how an ability to put on pants equates to the ability to tolerate the day to day stresses of working on a sustained and regular basis." (ECF No. 13, PageID.324). But she offers scant evidence on her own behalf to support the claim that she is more than moderately impaired in the ability to withstand work-related stress. And as previously stated, the ALJ did incorporate that moderately impaired ability into the RFC. The Court thus finds no error in the ALJ's treatment of Dr. Bray's opinion.

Lastly, Willis argues that the ALJ violated the treating physician rule by not giving the Dr. Nowak's September 2017 medical opinion controlling weight, and failing to give good reasons for doing so. For claims filed before March 27, 2017, such as Willis's, an ALJ must give the medical opinion of a claimant's treating physician controlling weight as long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record (the "treating physician rule"). 20 C.F.R. § 416.927(c)(2); *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). While controlling weight may be given to medical opinion evidence such as "the nature and severity of an individual's impairment(s)," controlling weight may not be given to "administrative findings

25

that are dispositive of a case"—for example, what an individual's residual

functional capacity is or whether an individual is disabled.  Soc. Sec. Rul. 96-

5p, 1996 WL 374183, at *2 (July 2, 1996); 20 C.F.R. § 416.927 (d); *see*

*also Warner*, 375 F.3d at 390 ("The determination of disability is ultimately the

prerogative of the Commissioner, not the treating physician." (alterations adopted)

(quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985))).  Furthermore,

controlling weight may not be given to an opinion "unless it also is 'not

inconsistent' with the other substantial evidence in the case record."  Soc. Sec. Rul.

96-2p, 1996 WL 374188, at *1 (July 2, 1996).

　　　If the ALJ decides not to give the treating physician's medical opinion

controlling weight, he must determine what weight to give it by looking at "the

length of the treatment relationship and the frequency of examination, the nature

and extent of the treatment relationship, supportability of the opinion, consistency

of the opinion with the record as a whole, and any specialization of the treating

physician."  *Blakley*, 581 F.3d at 406; 20 C.F.R. § 416.927(c).  The ALJ is required

to "always give good reasons in [the] notice of determination or decision for the

weight" of the "treating source's medical opinion" (the "good reasons

requirement").  20 C.F.R. § 416.927(c)(2); *see also* Soc. Sec. Rul. 96-8p, 1996 WL

374184, at *7 (July 2, 1996) ("If the RFC assessment conflicts with an opinion

from a medical source, the adjudicator must explain why the opinion was not

26

adopted."). These reasons must be specific in order to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

In declining to give controlling weight to Dr. Nowak's opinion, and in fact giving the opinion little weight, the ALJ noted that the overwhelmingly marked and extreme limitations that the opinion presents do not align with the objective treatment records. (ECF No. 11, PageID.73). Specifically, the ALJ references Willis's intake examination in March 2016 where it was found that her "signs and symptoms are not so severe that [she] cannot function at home and/or work." (*Id.*, PageID.276). The ALJ also refers to prior portions of his opinion, noting that her September 29, 2017 treatment notes were particularly bad, likely due to the passing of her uncle four days prior, and that this was the same date as Dr. Nowak's examination. (*Id.*, PageID.71, citing PageID.299). In general, the ALJ found that the treatment records indicated generally intact cognitive functioning; the ability to get along with others; the ability to perform simple repetitive tasks; no objective evidence of attention or concentration deficits aside from her distractible condition on September 29, 2017; and the aforementioned attire, grooming, and judgment within normal ranges. (*Id.*, PageID.73, citing PageID.67-68, 71).

Willis argues that the ALJ may not "play doctor" or "substitute his own medical judgment for that of the treating physician," but this is only the case "where the opinion of the treating physician is supported by the medical evidence." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (internal quotations omitted).  Specifically, a treating source opinion is only entitled to controlling weight if it is well-supported by acceptable evidence and not inconsistent with other substantial evidence.  20 C.F.R. § 416.927(c)(2).  Otherwise, the ALJ may find that the opinion is entitled to less weight so long as he gives good reasons for that determination.  *Id*.  Supportability and consistency with the record are two of the factors an ALJ may use to determine the weight given to an opinion, and here, the ALJ accurately noted that while there is some evidence to support the opinion, there is more evidence in conflict with its largely marked and extreme limitations.  As the Sixth Circuit has explained, "the standard on review is to determine if substantial evidence supports the ALJ's conclusion.... The fact that a record may also possess substantial evidence to support a different conclusion than that reached by the ALJ or that a reviewing judge might have decided the case differently is irrelevant*.*"  *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986).

For these reasons, the Court finds no reversible error in the ALJ's treatment of Willis's "low stress" limitations, or in the ALJ's treatment of the opinion

evidence.  However, due to the ambiguity inherent in the RFC as outlined in the previous section, the undersigned recommends that Willis's motion be granted and that this matter be remanded for further consideration and clarification.  On remand, the ALJ is free to reassess the evidence of record, including the medical opinions discussed above, as he or she sees fit within the Social Security guidelines.

## VI.    Conclusion

For the reasons set forth above, it is RECOMMENDED that Willis's motion be GRANTED IN PART, the Commissioner's motion be DENIED, and that this matter be REMANDED for further consideration under sentence four of 42 U.S.C. § 405(g) in accordance with this opinion.


Dated: February 17, 2021                          s/Kimberly G. Altman
Detroit, Michigan                                 KIMBERLY G. ALTMAN
                                                  United States Magistrate Judge


## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 17, 2021.

s/Marie E. Verlinde
MARIE E. VERLINDE
Case Manager